Massengill *vs.* The First National·Bank of Chattanooga.

---

MASSENGILL *vs.* THE FIRST NATIONAL BANK OF· CHATTA-NOOGA.

<div style="float:right">76 341<br>108 381</div>

1. Although money may have been loaned by a bank on a draft with bills of lading attached, and although the contract may have been embodied in the draft, yet if the facts and circumstances show that the borrower gave it, with the bills of lading attached, with the intent to deceive and defraud the bank, and the bank became aware of this, it had the right to repudiate the draft as void and sue upon an account for money loaned; and so doing, it had the right to put in evidence the draft with the bills of lading attached, and follow these with letters written by the drawer to the drawees, showing his intention to appropriate the goods or their proceeds to other uses than to pay the money loaned by the bank. This evidence was not objectionable, on the ground that the money was loaned on

this draft, given at the time; that it contained the contract on which suit should have been brought, and that there could be no recovery on it because it made a contract conditional upon presentation for acceptance and notice of dishonor, which was not shown.

(*a.*) Nature of fraud discussed.

2. Letters from the drawer to the drawees, directing them to send the money for which the property was sold to the drawer directly, and their checks in response, with no allusion to the money borrowed from the bank, and the draft and bills of lading deposited to secure it, were admissible to show the intent throughout the transaction to cheat the bank, as also was all that the drawer said touching his conduct, during the negotiation and afterwards.

3. There was no error in refusing to give in charge requests based upon the idea that the whole contract was in the draft, and therefore no suit could be maintained on account for the money loaned; and that there could be no recovery out of the drawer without notice to him of the dishonor of the draft. Such requests should have been qualified with the proviso that there was no fraud in the drawer for the purpose of palming off the written contract on the bank, with a view to cheat and defraud it.

4. The real question is one of fraud or no fraud. The full charge is not given. No exception is taken to it. The refusal to charge the written requests is the only error assigned connected with it, and the presumption in such cases is that the charge was right.

5. There being no motion for a new trial, the question whether the verdict is supported by the evidence is not before this court.

(*a.*) There should not have been a nonsuit, under such an issue and such facts as are here presented.

May 1, 1886.

Contracts. Fraud. Evidence. Charge of Court. Practice in Supreme Court. Nonsuit. Before Judge FAIN. Catoosa Superior Court. August Adjourned Term, 1885.

The First National Bank of Chattanooga brought an action of complaint against James Massengill on an open account for money advanced, amounting to $700.00, principal. On the trial, the plaintiff offered in evidence a draft, dated October 19, 1881, due twelve days after date, for $700, drawn by the defendant on E. & D. Nepper, of Cincinnati, O., in favor of the plaintiff's cashier, and endorsed for collection for account of the plaintiff. The defendant objected to this, on the ground that there was no evidence

of presentation for acceptance or payment and of notice of dishonor to him, and that the suit was on an open account and not on the draft. The objection was overruled.

The plaintiff then read in evidence the interrogatories of its cashier, in substance, as follows: The defendant applied to the plaintiff for a loan of money on October 19, 1881. He had railroad bills of lading covering twelve car-loads of bark consigned to E. & D. Nepper, and proposed to attach them to this draft. He represented that he was authorized to draw this amount as the proceeds of the bark. He said that twelve days were necessary to allow the bark to arrive and be measured by the consignees. On these representations, the draft, with the bills of lading attached, was taken, and $696.51 were advanced to the defendant. The amount never has been repaid. The witness had a conversation with the defendant afterwards, when the defendant was under arrest, on account of this transaction. He did not deny owing the amount advanced. The witness told him that he had seen various letters (which were attached to the interrogatories), and asserted that the defendant had collected for the bark money which belonged to the plaintiff. The defendant neither admitted nor denied these statements, but said the witness had not pursued the proper course to get the money.

Attached to the answers were three letters from the defendant to E. &. D. Nepper. The first was dated October 28, 1881, and asked that they would send him New York exchange for as much as they could send on bark which had come to hand, and stated that he would pay off the draft which he had drawn on them. The second was dated November 9. It acknowledged receipt of New York exchange for $380.24, and asked that all railroad receipts be sent to him. The third was dated January 13, 1882, and contained the following sentences: "I sent you twenty car-loads, and you have rendered statements and sent

checks for nineteen car-loads. You are still due me one more. You can send me check for that on N. Y."

These interrogatories were objected to, on the ground that the draft was the contract, and an unconditional implied contract could not be shown by parol, and because the evidence was irrelevant to the case made by the pleadings. The objection was overruled.

The plaintiff read in evidence the bills of lading referred to in the interrogatories of the cashier and which were attached thereto; also the following New York exchange, drawn to the order of E. & D. Nepper and endorsed by them to the defendant and by him to others: November 3, 1881, for $380.25; November 14, for $110.30; December 3, for $260.40.

The defendant objected to each of these as being irrelevant and incompetent under the pleadings. The objection was overruled.

The plaintiff closed. The defendant moved for a non-suit, which was refused.

The defendant testified that, at the time of drawing the draft, E. & D. Nepper were indebted to him for other bark shipped to them, besides that included in the bills of lading attached to the draft; and that afterwards he shipped to them other bark, making in all twenty-six car-loads, for which he had received no pay; that the bark included in the bills of lading attached to the draft was worth about $77 per car; that the money which he had received from E. & D. Nepper was for other bark, and that he had never been paid for the twelve car-loads included in the draft. He denied the conversation testified to by the cashier, and stated that he had never had any notice of non-payment, but supposed the draft had been paid, as the drawees had sufficient funds with which to pay it.

For the plaintiff, in rebuttal, a witness testified that, at the instance of the cashier of the bank, he told the defendant that he must "fix up" the draft, which the latter agreed to do.

The defendant requested the court to give various charges, to the effect that if the bill of exchange constituted the contract on which the money was advanced, there could be no recovery on the account, but the proper suit would be on the contract; also that, in order to recover under the bill of exchange, it would be necessary to show presentation, dishonor and notice to the defendant. These requests to charge were refused.

The jury found for the plaintiff. The defendant excepted and assigned error on each of the rulings stated above.

McCUTCHEN & SHUMATE; W. H. PAYNE, for plaintiff in error.

J. H. ANDERSON; R. J. McCAMY, for defendant.

JACKSON, Chief Justice.

The Bank of Chattanooga sued James Massengill for seven hundred dollars, borrowed from the bank by Massengill. No plea appears of record. We suppose that the general issue was in, but it is not set out in the transcript, and no allusion to any plea is in the bill of exceptions.

The case was defended by counsel, however, a recovery was had for the bank, and without making any motion for new trial, the case is brought up on exceptions to rulings of the court.

1. The first exception is that the court erred in admitting as evidence a draft, with certain bills of lading attached thereto, of bark consigned to the drawees, commission merchants or factors, in Cincinnati, on the ground that the money was loaned on this draft given at the time, and that the contract of loan was contained in the draft, and suit should have been brought on it, and that there could be no recovery on it, because it made a contract conditional on presentation for acceptance and notice of

dishonor; but neither presentation to the drawees nor notice to the drawer was in proof.

Fraud vitiates all contracts. Code, §2751. Misrepresentations by one party, designed to deceive the other, or if not designed, actually deceiving the other party, make fraud and void sales, even where the party did not know the misrepresentation was false. Any artifice designed to mislead is sufficient evidence of fraud. Code, §2634. It is subtle, and slight circumstances are sufficient to convey conviction of fraud. Code, §2751.

Even, therefore, if the contract was embodied in the draft, and the facts and circumstances show that the borrower gave it with the bills of lading with the intent to deceive and defraud the bank, and the bank became aware of it, it had the right to repudiate the draft as void, and sue upon the account for money loaned; and so doing, it had the right to put in evidence the draft with the bills of lading attached, and then follow up this evidence with letters written by the drawer to the drawees showing his intention to appropriate the goods—in this case bark—or rather the proceeds, to other uses than to pay the money loaned by the bank. So we think the draft and the bills of lading were admissible.

2. It follows also that the letters to the drawees, directing them to send the money for which the bark was sold to the drawer directly, and their checks in response, with no allusion to this money borrowed from the bank and of his draft and bills of lading deposited to secure that money so borrowed, as well as all that the drawer said, as proved by the bank by interrogatories of the cashier touching his conduct during the negotiation and afterwards, were properly admitted to show the intent from the beginning and all the while to cheat the bank.

3. It also follows that the requests to charge, based upon the idea that the whole contract was in the draft, and therefore no suit could be maintained on the account for money loaned, and that there could be no recovery out of

the drawer without notice to the drawer of the dishonor of the draft, were all properly refused without more, because all such requests to charge should have been qualified with this proviso, to-wit, provided that there was no fraud in the drawer to palm off this written contract on the bank with the view to cheat and defraud it.

4. The real question is one of fraud or no fraud. The full charge is not given. No exception is taken to it. The refusal to charge the written requests is the only error assigned connected with it ; and the presumption in such cases is that the charge was right.

5. There being no motion for a new trial, the question whether the verdict is supported by the evidence is not before us. It is for the jury to trace and determine its subtleties, and there it is left, plaintiff in error not attacking the verdict of the jury by a motion to set it aside, but assigning errors only on the evidence which the court admitted and the requests to charge which it refused.

It is unnecessary, therefore, for us to examine the facts closely to find that they sustain the verdict. If so, doubtless, from a bird's-eye view of them, the task would be easy. Certainly there should have been no nonsuit on such an issue and under such facts. *Dawson vs. Pennaman*, 65 *Ga.*, 698.

Judgment affirmed.